### 52630. LEWIS v. CITIZENS & SOUTHERN NATIONAL BANK et al.

MARSHALL, Judge.

This is an appeal from a summary judgment in favor of the Citizens & Southern National Bank (C & S) on a promissory note, signed by defendant as the maker. Defendant contends that the trial court erred in granting summary judgment as there were genuine issues of material fact. We agree. *Held:*

1. On May 24, 1971, a group of investors formed the "Bolton Road Medical Center," a Georgia limited partnership, and obtained financing for construction of the Bolton Road Hospital. The partnership formed a wholly owned management company to operate the hospital and arranged to finance the equipment through C & S. To raise operating capital the partnership offered 1,200 "units" of "Limited Partnership Interest" at $2,500 per "unit." C & S, through its Bolton Road branch bank, "agreed to loan $2,000 on each unit . . . up to a million dollars . . ." Thus, the purchaser of the unit would put up $500 (20%) and C & S would finance $2,000 (80%). C & S conditioned the financing upon a guarantee by the general partners to redeem the units from any borrower who defaulted in payment. The "units" would be pledged to the bank as security for the loan.

Sale of the "units" started in October, 1973, but the partnership was unable to raise sufficient funds needed by the hospital. C & S was aware of the hospital's financial plight and advanced them $350,000 for hospital operations. The manager of the Bolton Road C & S branch bank described the hospital's "insatiable appetite for cash." He stated: "We knew they were in a cash flow problem . . . that is basically why we changed . . . that last letter, to show we wanted financial statements and wanted—we were kind of spreading the liability as I would call it a little bit . . . [W]e had shifted to the position of wanting—rather than having the hospital and the

partners—quote—on the loan, that we would want, you know, other principals involved . . . and having their equity contribution involved in the hospital . . . [W]e felt that the hospital had gotten as much as we were comfortable with, and we wanted it more spread out . . . through different individuals, through the purchase of units . . . [W]hat we had was the hospital operating in the red longer than it had been initially projected, and we had a repayment agreement on our funds . . . and it had gone from a repayment to a renewal situation." We note that the Bolton Road Medical Center is presently in bankruptcy in the U. S. District Court.

When the defendant answered the complaint, he also filed a third-party complaint, naming the general partners of the Bolton Road Medical Center as third-party defendants. W. E. Strother, Sr., as one of the third-party defendants, and a general partner, admitted that he had acted as a "limited agent" for C & S in taking loan applications and borrower's authorization form from the bank to a meeting of the general and limited partners and requested the doctors to sign the promissory notes for money needed by the Bolton Road Hospital. He had advised the doctors that all they had to do was to sign the blank promissory note forms. Defendant stated: "I was told this actually was a loan by the [C & S] bank to the [Bolton Road] hospital for operating expenses and that [the general partners] . . . would take over the payment of these notes and that the bank understood this . . . I was told: 'No, you won't have to pay anything on this unless you actually want to keep the shares' . . . [I]n my conversation with the bank later, when I expressed this, it was a rather nonchalant response I got that expressed that they understood . . . [Strother said] it was to be a show of support for the hospital and the general partners were entirely responsible and we would not be expected to pay any payments . . . Mr. Strother said . . . that the bank understood that I would not be called on to make any payments . . ."

In the third-party defendant's answer, it was admitted "W. Earl Strother, Sr., in causing the Note to be executed by the Defendant in favor of the Plaintiff was acting as a limited agent of the Plaintiff and made such

misrepresentations in the course of his duties as a limited agent of the Plaintiff." Strother, in his affidavit, stated: "... it was understood by the Bank, by the General Partners, and the limited partners that the General Partners were the persons to whom the Bank should look for repayment of the funds advanced to the Partnership . . . The General Partners agreed to make all payments under such Note . . . I discussed the aforesaid financing scheme with officers of the Bank, in particular Brooks Campbell . . . then head of the Bolton Road Branch of the Bank, and they were willing to advance additional funds to the Partnership on this basis. At that time the Bank was very anxious to have the business of the Partnership, the Hospital, and any and all limited partners of the Partnership, the Hospital, and any and all limited partners of the Partnership, and Campbell was very helpful in implementing the foregoing scheme . . . Campbell would prepare the necessary forms, and I would give the limited partner a check for twenty per cent (20%) of the purchase price of such Units . . . Campbell would, after a General Partner had guaranteed the Note, transfer the funds represented by the Note to the Partnership account. On some occasions, I even took the documents from Campbell, had the limited partner sign them, and returned them to Campbell, all without the limited partner even going to the Bank to get his 'loan' . . . The Bank was fully aware that the limited partners were participating in the aforesaid financing scheme as an accommodation to the Bank and the Partnership... and did not intend to repay the Notes, since such Notes were at all times by all parties, including the Bank, intended to be obligations of the General Partners."

(a) Defendant enumerates as error, lack of consideration flowing to him from the loan. He admits execution of the promissory note and agreed to let his name be used in this commercial transaction so that the loan to the hospital could be accomplished. A person who lends his name to another party to a negotiable instrument in any capacity is an "accommodation party." Georgia Uniform Commercial Code, Code Ann. § 109A-3—415 (Ga. L. 1962, pp. 156, 262). And, he is an accommodation party regardless of whether he received any compensation for so acting or did so gratuitously. 2

Anderson, Uniform Commercial Code, 1000, Commercial Paper § 3-415:4. The accommodation party cannot legally assert lack of consideration for his accommodation as the value received by the principal debtor—in this instance, the hospital, is the consideration for which the accommodation party bargained. *McClure v. Farmers & Merchants Bank,* 39 Ga. App. 753 (1) (148 SE 341); 2 Anderson, Uniform Commercial Code, 1002, Commercial Paper § 3-415:8. There is no merit to this enumeration.

(b) Defendant contends that Strother was the "special agent" of the plaintiff in the solicitation and execution of this loan. "The relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him, or subsequently ratifies the acts of another in his behalf." Code § 4-101. A "special agent" is one to whom there is a delegation to do a single act. *Armour Fertilizer Works v. Maddox,* 168 Ga. 429 (1) (148 SE 152).

This court has held that bare assertion or denial of the existence of an agency relationship is a statement of fact when made by one of the purported parties to the relationship, but when made by an outsider—as by the defendant here, bare assertions are merely conclusions of law. *Salters v. Pugmire Lincoln-Mercury, Inc.,* 124 Ga. App. 414 (184 SE2d 56). The defendant here does not rely upon his bare assertion of agency but: (1) admissions of the third-party defendant in his answer, (2) an affidavit of one of the alleged parties of the agency, and (3) circumstances, apparent relations, and conduct of the parties.

Treating these responses in inverse order, this court has consistently held that proof of agency may be made by showing circumstances, apparent relations, and conduct of parties (*King v. Towns,* 102 Ga. App. 895 (4) (118 SE2d 121); *Fordham v. Garrett-Schwartz Motor Co.,* 121 Ga. App. 237, 238 (3) (173 SE2d 450)), or by circumstantial evidence alone. *Bearlund v. Webb,* 127 Ga. App. 555, 558 (194 SE2d 328). In the instant case, at a meeting between a branch manager of C & S and Strother, Strother was given blank loan application forms and "Borrower's Authorization Forms" (which were used to deposit the amount loaned to the account of the hospital), to be

executed by persons applying for a loan from C & S. Strother was the sole contact between the lender and the borrower. Defendant neither went to the bank, met with any bank official or loan officer, nor submitted credit information to the bank, but completed the entire loan transaction through Strother. Strother informed the defendant of the terms and conditions of the loan. Was this sufficient to establish the relationship of principal and special agent between C & S and Strother? Stated another way, if Strother was not the agent of C & S, then which bank agent did procure and process the loan from defendant? If the fact finders determined that a "special agency" was created, we would affirm under the "any evidence" rule.

Even if the conduct of C & S and Strother did not create the special agency, the subsequent ratification by C & S of Strother's actions fall within the parameters of Code § 4-101. After execution of the note defendant stated, "someone from the bank called me . . . and I explained to them why I had signed the note, because Mr. Strother and the others to whom I had talked had taken full responsibility for the note . .. . and that I would not be looked to for payment of the note. . ." When the payment slips were received by defendant, he sent them to Strother and called the bank and told them "the general partners were taking care of this, the bank seemed to understand." Further, when the first quarterly payment was not made the bank called defendant and he told them "Mr. Strother has taken this over from me and he will make the payment . . . and the response they gave me indicated they understood what it was about." Thereafter, the general partners made the first quarterly payment and it was accepted by the bank. The acceptance of benefits flowing from acts of an agent is "implied ratification" whether the principal intends to ratify the agency or not. *Armour Fertilizer Works v. Maddox,* 168 Ga. 429, supra, (2). It should be noted that the defendant never made any payment to the bank. He never made the initial down payment of 20%. The general partners gave that amount to the bank. The defendant never received the loan from the bank. That money was given to the general partners. Defendant did not receive the "units" supposedly

purchased by the loan. The "units" were forwarded to the bank as security. The general partners made the only payment ever made on the note. The fact finders could conclude that these subsequent acts of the bank amounted to a ratification of the original acts of Strother in behalf of the bank.

The remaining ground asserted as establishing a special agency was an admission of one of the parties. In his answer, Strother admitted that "in causing the Note to be executed by the defendant in favor of the plaintiff [he] was acting as a limited agent of the plaintiff and made such misrepresentation in the course of his duties as a limited agent of the plaintiff." As we noted earlier "assertion or denial of the existence of an agency relationship is a statement of fact when made by one of the purported parties . . ." *National Life &c. of Canada v. Massey-Ferguson Credit Corp.*, 136 Ga. App. 311, 315 (220 SE2d 793). Accord, *Chrysler Credit Corp. v. Barnes,* 126 Ga. App. 444, 453 (191 SE2d 121); *Oglesby v. Farmers Mut. Exchange,* 128 Ga. App. 387, 389 (5) (196 SE2d 674). The trial court was not at liberty to disregard this statement of fact by one of the purported parties to the agency.

"The cardinal rule of the summary judgment procedure is that the court can neither resolve the facts nor reconcile the issues, but only look to ascertain if there is an issue." *Bagley v. Firestone Tire &c. Co.,* 104 Ga. App. 736, 739 (123 SE2d 179). The party moving for summary judgment has the burden of showing the absence of a genuine issue of any material fact and if the trial court is presented with a choice of inferences to be drawn from the facts all inferences of fact from the proofs proffered at the hearing must be drawn against the movant and in favor of the party opposing the motion. United States v. Diebold, 369 U. S. 654, 655 (82 SC 993, 8 LE2d 176) (1962).

"A litigant has a right to a trial where there is the slightest doubt as to the facts . . ." Doehler Metal Furniture Co. v. United States, 149 F2d 130, 135 (2d Cir. 1945); Peckham v. Ronrico Corp., 171 F2d 653, 657 (1st Cir. 1948). "[A]ll inferences from the evidence introduced . . . will be interpreted favorably toward making an issue of fact." *Bagley v. Firestone Tire &c. Co.,* 104 Ga. App. 736,

739, supra. Thus, "[t]o prevail on motion for summary judgment, the movant has the burden to produce evidence which conclusively eliminates all material issues in the case." *Metropolitan Life Ins. Co. v. Forsyth,* 122 Ga. App. 463, 464 (177 SE2d 505); *Kohlmeyer & Co. v. Bowen,* 130 Ga. App. 386, 387 (4) (203 SE2d 630). This, he failed to do. Applying the rule that " '[w]here the evidence on a motion for summary judgment is ambiguous or doubtful, the party opposing the motion must be given the benefit of all reasonable doubts and all favorable inferences and such evidence construed most favorably to the party opposing the motion' " (*Cooper v. Plott,* 226 Ga. 647, 648 (177 SE2d 82); *Jordan v. Ailstock,* 230 Ga. 67, 70 (195 SE2d 425)), the movant has failed to exclude all reasonable doubt as to the issue of the existence of the agency of Strother for C & S in procuring the execution of the promissory note by defendant, which would—under general agency principles, bind the principal for acts of the agent acting within the scope of his authority. Code § 4-302.

(c) Plaintiff contends that defendant should not be permitted to rebut an "unconditional promise to pay contained in [the note] . . . by proof of a contemporaneous oral agreement that it would never be enforced." Plaintiff is correct in his statement of the law insofar as he goes, but he stops short of the full issue. We are aware that "[p]arol contemporaneous evidence is inadmissible generally to contradict or vary the terms of a valid written instrument." Code § 38-501; *Pulliam v. Merchants & Miners State Bank,* 33 Ga. App. 68 (125 SE 509). However, "[t]he parol evidence rule does not apply when it is attempted to show that a written instrument is void because of fraud." *Hinson v. Hinson,* 221 Ga. 291 (2) (144 SE2d 381); Code § 38-503. "Fraud renders contracts voidable at the election of the injured party." Code § 20-502. Cf. Ga. UCC, Code Ann. § 109A-3—306 (b) (Ga. L. 1962, pp. 156, 255). Fraud may be actual or constructive. "Actual fraud consists in any kind of artifice by which another is deceived. Constructive fraud consists in any act of omission or commission, contrary to legal or equitable duty, trust, or confidence justly reposed, which is contrary to good conscience and operates to the injury of another." Code § 37-702. Thus, under the first subdivision of this

Code section, "[a]ny misrepresentation intended to deceive and which does deceive is a fraud . . ." (*Oliver v. O'Kelley,* 48 Ga. App. 762 (1) (173 SE 232); *Adkins v. Lee,* 127 Ga. App. 261, 264 (193 SE2d 252)), and the result is the same under the second subsection if the plaintiff's agent "innocently, by mistake, misrepresents to another a fact which is material . . . [because] it is fraud in law . . ." *Bass v. Seaboard A. L. R. Co.,* 205 Ga. 458 (1) (53 SE2d 895); *Boroughs v. Belcher,* 211 Ga. 273 (1) (85 SE2d 422); *Bagley v. Firestone Tire &c. Co.,* 104 Ga. App. 736, supra, 741; Code § 37-703. Material misrepresentation, made for the purpose of inducing another to execute a promissory note "will authorize the [maker], after executing the note, to rescind the transaction on discovery, of the fraud, if he relied upon the representation and was induced thereby to execute the note . . ." *Nipper v. Griffin Mercantile Co.,* 31 Ga. App. 211 (3) (120 SE 439). Accord, *Bentley v. Barlow,* 178 Ga. 618 (2c) (173 SE 707).

We cannot say as a matter of law that a jury could not have found actual or constructive fraud under the facts and circumstances recited above. See *Hendrix v. Scarborough,* 131 Ga. App. 342, 344 (206 SE2d 42). "In its very nature fraud is subtle, and its existence may be proved by circumstances. Whether a note or other writing was procured by fraud is a question for the determination of a jury." *Crandall v. Shepard,* 166 Ga. 889 (3) (144 SE 772); *Crowder v. Electro-Kinetics Corp.,* 228 Ga. 610, 614 (187 SE2d 249); *Bagley v. Firestone Tire &c. Co.,* 104 Ga. App. 736, supra, 742; *Adkins v. Lee,* 127 Ga. App. 261, 264 (3), supra. The trial court erred in granting summary judgment to plaintiff.

*Judgment reversed. Deen, P. J., and Webb, J., concur.*

ARGUED SEPTEMBER 14, 1976 — DECIDED SEPTEMBER 27, 1976 — REHEARING DENIED OCTOBER 14, 1976 —

*Ringel, Gray & Hinson, John C. Gray, D. W. Latimore, Jr., Barwick, Bentley & Binford, M. Cook Barwick, Gary L. Seacrest,* for appellant.

*McClain, Mellen, Bowling & Hickman, A. Orville*

*Bracey, Richard C. Bradley, III, Robert A. Elsner,* for appellees.