## 54713. FOUNTAIN v. WORLD FINANCE CORPORATION.

WEBB, Judge.

World Finance Corporation held Gloria Fountain's note on which as of December 28, 1976 she was in arrears one month's installment. She alleged in her complaint for damages that on that date James Stone, an agent and employee of World Finance, telephoned her home at 5:00 p.m. at which time she was resting after working from 5:00 a.m. Her minor son answered the telephone, and Stone insisted that he call his mother. She answered the telephone, and in the ensuing conversation Stone became abusive to her, "demanding that she get down there with the payment 'today'; called her a bitch, accused her of being drunk, and used profane language to her; threatened to get her minor son's Social Security payments if she did not get down there with the money." She "became highly agitated and upset and hung up the telephone; . . . Stone called her back and again abused her and cursed at her. Every time she hung up, Stone called her back until she refused to answer the telephone and

called on the law enforcement officers for assistance." She alleged as a consequence she was caused to suffer migraine headaches and to experience sleeplessness and headaches for several days and nights thereafter for which she sought special and punitive damages.

World Finance admitted that Stone was its agent and employee on the date of the alleged telephone calls, but denied all other allegations. It moved for summary judgment, in support of which two affidavits were submitted, one from Stone and the other from the corporation's manager. Stone swore that he was never authorized or directed by any superior of World Finance to, and that he did not, abuse or do any of the acts charged by Gloria Fountain, and that he did not telephone or talk by telephone to her at her home or any other place. The manager's affidavit was to the effect that he had never authorized or directed Stone or any other employee to abuse Gloria Fountain by telephone or otherwise. Both affiants asserted that at no time on December 28 "up to and including the alleged telephone calls" was Mrs. Fountain on the business premises of World Finance.

By affidavit in opposition to World Finance's motion for summary judgment, Mrs. Fountain swore:

"On December 28, 1976, at or about the hour of 5:00 p.m. called plaintiff at her home; plaintiff's minor son answered the telephone, and plaintiff, hearing him in conversation, answered the phone; defendant's employee, James Stone was on the line and in the ensuing conversation with plaintiff in regard to a past due installment on her note to defendant, became abusive, demanding that she get down there right away with a payment; called her vile names, accused her of being drunk, and threatened to get her son's social security payments if she did not get down there.

"Plaintiff became highly agitated and upset and hung up the telephone; said Stone called her back and again abused and cursed her. Every time she hung up the telephone, he called her back until she refused to answer and called the sheriff's office for assistance. Deputy Sheriff, Harold Davis came in response to plaintiff's call and met her and her former husband, Jackson Fountain at the office of the defendant, World Finance.

"The last time Stone called and plaintiff answered the 'phone, she asked him if he was the Manager and he said 'No' and plaintiff asked to speak to the Manager; a man came on the line, and said 'This is Manager Young speaking.' Plaintiff asked him why he would let Mr. Stone talk to his customers like that, and he said, 'He was doing his job,' or 'He was doing what he was paid to do.'"

Deputy Sheriff Harold Davis by affidavit said that on December 28, at or about 6:00 p.m. "a call came from Mrs. Gloria Fountain asking for assistance from the Sheriff's office; I talked to her; she was crying and seemed very upset; after talking with her, I later met her and her former husband, Jackson Fountain, at the office of World Finance Corporation. I talked with Mr. Young, the Manager; Mr. James Stone was present."

The trial judge granted World Finance's motion for summary judgment, and dismissed Mrs. Fountain's complaint with prejudice. She appeals.

World Finance in support of the grant of summary judgment has cited *Behre v. National Cash Register Co.,* 100 Ga. 213 (27 SE 986) (1896), and a number of its progeny. These cases involve either slander or libel, and are inapposite. "An essential element of 'slander' is that slanderous words be spoken in presence of another than person slandered, and publication is always material and issuable fact in action for slander." Black's Law Dictionary, 4th Ed. We do not have here an action for slander; the opprobrious and frightening words were uttered directly to the complainant. Mrs. Fountain alleged that the conduct of World Finance's employee, Stone, "in line and scope of his employment, was wilful and malicious and done with intent to frighten and injure" her, "after he knew, or should have known," that she was terribly upset. *Herring v. Pepsi Cola Bottling Co.,* 113 Ga. App. 680, 682 (2) (149 SE2d 370) (1966) and cits., are also inapplicable since they turn upon the absence of special damages.

"Every person shall be liable for torts committed by... his servant, by his command or in the prosecution and within the scope of his business, whether the same shall be by negligence or voluntary." Code Ann. § 105-108.

"The true test is ... whether or not it was committed in the prosecution and within the scope of the master's business." *Frazier v. Southern R. Co.,* 200 Ga. 590, 593 (2) (37 SE2d 774) (1946); *Piedmont Cotton Mills v. General Warehouse,* 222 Ga. 164, 168 (2) (149 SE2d 72) (1966); *Harden v. Clarke,* 123 Ga. App. 142, 146 (179 SE2d 667) (1970).

Whether the acts and words of World Finance's agent and employee were by command or were committed in the prosecution and within the scope of its business presents a material issue of fact. World Finance's manager said Stone was not and never had been authorized to commit such acts, but Mrs. Fountain swore the manager said to her, "He was doing his job," or "He was doing what he was paid to do." Stone said he never talked by telephone or otherwise to Mrs. Fountain on that day, but she swore he did call her several times, abused her with profane language and threatened to get her child's social security payments. Mrs. Fountain said she called the deputy sheriff, and met him at World Finance offices after the telephone calls. The deputy sheriff swore Mrs. Fountain called him, crying and upset, that he met her at World Finance offices, and that Young, the manager, and Stone were present. Neither of the latter mentioned the visit in their affidavits.

" 'To prevail on motion for summary judgment, the movant has the burden to produce evidence which conclusively eliminates all material issues in the case.' *Metropolitan Life Ins. Co. v. Forsyth,* 122 Ga. App. 463, 464 (177 SE2d 505). 'In no sense does the Summary Judgment Act authorize the courts to sit as both judge and jury [Cits.]. On motion for summary judgment the court is not authorized to try and resolve issues of fact; the function of the court, and its only authorized function under this procedure, is to determine the existence of a genuine issue of material fact. [Cits.].' " *Kohlmeyer & Co. v. Bowen,* 130 Ga. App. 386, 387 (4) (203 SE2d 630) (1973).

" 'The cardinal rule of the summary judgment procedure is that the court can neither resolve the facts nor reconcile the issues, but only look to ascertain if there is an issue.' [Cit.] The party moving for summary judgment has the burden of showing the absence of a

genuine issue of any material fact and if the trial court is presented with a choice of inferences to be drawn from the facts all inferences of fact from the proofs proffered at the hearing must be drawn against the movant and in favor of the party opposing the motion. [Cit.]" *Lewis v. C. & S. Nat. Bank,* 139 Ga. App. 855, 860 (229 SE2d 765) (1976).

There are material issues of fact for determination, and the trial judge erred in granting summary judgment.

*Judgment reversed. Deen, P. J., concurs. Birdsong, J., concurs specially.*

ARGUED OCTOBER 6, 1977 — DECIDED OCTOBER 28, 1977 — REHEARING DENIED NOVEMBER 16, 1977 —

*W. L. Dwyer, J. Frank Myers,* for appellant.

*Smith & Jones, Henry O. Jones, III, Landau & Davis, Edmund A. Landau, Jr.,* for appellee.

BIRDSONG, Judge, concurring specially.

That an issue of fact exists as to whether the employee acted within the scope of his employment is clear. Similarly, an issue of fact is presented as to whether the employee actually telephoned plaintiff, and, if so, whether his conduct constituted "tortious misconduct." The threshold issue, however, is whether the alleged misconduct occurred within the context of a business invitor-invitee relationship. See *Zayre of Atlanta v. Sharpton,* 110 Ga. App. 587 (139 SE2d 339) and cits. When such a relationship is established, a duty is owed to business invitees, whether on the premises or off. *Colonial Stores v. Sasser,* 79 Ga. App. 604 (54 SE2d 719). As all of the foregoing issues require factual resolution, I concur in the result reached by the majority.