## 74677. DANIEL v. BANK SOUTH CORPORATION.
(358 SE2d 664)

Birdsong, Chief Judge.

Summary Judgment. Daniel was and has been a banking customer of Bank South for a number of years. Over a period of several years, he obtained several loans in business transactions and personal loans. In 1981, Daniel had satisfied all his loans with Bank South except two personal notes covering two separate automobile loans.

Daniel had a checking account with Bank South from which apparently Bank South automatically withdrew the monthly installment payments to pay the car notes.

Daniel was fairly heavily involved in real estate business prior to and during 1981. There was evidence presented to the trial court that Daniel's customary practice was to take a construction loan and as the premises neared completion of construction or renovation, Daniel would replace the construction loan with a permanent loan. The real estate then would be sold with the permanent loan. In late 1981, Daniel found it necessary to obtain new or further financing for his real estate activities. It appears that Daniel applied to Halifax Mortgage, Inc. for financial aid. Halifax Mortgage requested a bank reference while processing the loan application. This was in the form of a U. S. Housing and Urban Development, Federal Housing Administration "Request for Verification." The form was filled out in the name of William H. Paul Daniel and submitted to Bank South for execution. Halifax Mortgage denied Daniel's application for financial assistance apparently because Daniel did not have current income tax returns or credit.

Meantime, the Request for Verification was being processed by Bank South. The form requesting the verification contained the checking account number maintained by Daniel but did not contain the account numbers of the two notes covering the two cars. In actual fact, the two car notes were issued in the name of Paul Daniel. Thus when the bank employee filled out the Request for Verification, the employee searched bank records for bank activity in the name of William H. Paul Daniel and not in the name of Paul Daniel. As a result the verification form reflected that Daniel had no outstanding loans in the name of William H. Paul Daniel. After being denied financial aid by Halifax Mortgage, Daniel applied to New American Mortgage. Daniel indicated that he had outstanding loans with Bank South (i.e., he had credit). However, when Daniel submitted the Request for Verification form prepared by Bank South, that form indicated Daniel had no outstanding loans.

The Request for Verification form contained a statement as follows: "I have applied for a mortgage loan and stated that I maintain account(s) with the bank or other depository named in Item 1. My signature below authorizes that bank or other depository to furnish the lender named in Item 2 the information set forth in Part II. Your response is solely a matter of courtesy for which no responsibility is attached to your institution or any of your officers." The signature of William Paul Daniel appears immediately below.

New American Mortgage eventually likewise denied Daniel financial assistance apparently because Daniel had not correctly informed the lender of the loans (obviously an incorrect assumption by the

lender). Ultimately some of the mortgage holders on Daniel's real estate holdings foreclosed because Daniel could not obtain new temporary financial assets. Each foreclosure aggravated his position and eventually Daniel was forced into liquidation bankruptcy. When filing for bankruptcy, Daniel did not schedule the two notes with Bank South. Bank South moved the bankruptcy trustee to abandon the debts and allow Bank South to recover the two autos secured by the unscheduled debts. This was authorized.

Daniel filed this complaint against Bank South seeking damages for the failure to file an accurate credit report resulting in the denial of credit and ultimately causing Daniel to lose all his assets through bankruptcy.

Bank South answered and after extensive discovery moved the trial court for summary judgment. Among its several grounds, Bank South argued to the trial court that the trustee in bankruptcy was the real party in interest in that the trustee could not have abandoned the debt represented by the two notes to Daniel because the trustee was not aware of those two notes. It contended that there was no notice to the bank that there were two notes in the name of Paul Daniel because the request for verification pertained to William H. Paul Daniel. The bank also argued that the waiver signed by Daniel relieved the bank and its officers and employees of any negligence in making a search of its records. The bank also contended that the damages suffered through the bankruptcy and loss of property through foreclosure were too remote and were not proximately caused by the lack of information on the Request for Verification form. Moreover, the bank contended that Daniel was aware of the problem with the form prior to any foreclosures or denial of financing but declined or refused to reapply for a new verification.

Daniel countered with facts and contentions that the trustee *was* aware of the notes prior to institution of the litigation and thus there was an issue as to whether the trustee had abandoned the notes back to Daniel so as to make him the real party in interest. Daniel concedes the two outstanding notes were not identified in the body of the Request for Verification form and the name of William H. Paul Daniel was the name of the requestor, whereas the notes were in the name of Paul Daniel. He also points out that the checking account number was reflected in the form and the bank routinely satisfied the monthly installment payments of the two notes from that checking account, thus placing the bank on notice of the existence of the notes. Daniel also denied that the form contained a waiver, that he never intended a waiver and even if a waiver could be implied, there may well be a public policy issue if the waiver could indemnify the bank against its own gross negligence. Daniel further contends that issues of proximate cause and negligence, simple or gross, are primarily mat-

ters for a jury. He further offered evidence and argument that it was for a jury to decide whether Daniel did all that was reasonable under the circumstances to mitigate his damages or whether the damages were proximately caused by Bank South or were too remote.

We are bound by the premise that in motions for summary judgment, the evidence must be construed most favorably toward the party opposing the grant of the same; and most unfavorably toward the party applying for the motion for summary judgment. All inferences and conclusions which arise from the evidence must be likewise construed. *Faircloth v. Plastic Clad Corp.*, 139 Ga. App. 444, 445 (228 SE2d 397); *Tipton v. Harden*, 128 Ga. App. 517 (4) (197 SE2d 746). The cardinal rule of the summary procedure is that the court can neither resolve facts nor reconcile the issues but only look to ascertain if there is an issue. *Bagley v. Firestone Tire &c. Co.*, 104 Ga. App. 736, 739 (123 SE2d 179). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact and if the trial court is presented with a choice of inferences to be drawn from the facts, all inferences of fact from the proofs proffered at the hearing must be drawn against the movant and in favor of the party opposing the motion. *United States v. Diebold*, 369 U. S. 654, 655 (82 SC 993, 8 LE2d 176); *Lewis v. C & S Bank*, 139 Ga. App. 855, 860 (229 SE2d 765). Applying these principles, we are constrained to conclude there remain unresolved issues of material fact that must be decided by a jury. Accordingly, the trial court erred in granting summary judgment to Bank South.

*Judgment reversed. Deen, P. J., and Pope, J., concur.*

DECIDED JUNE 10, 1987.

*Fredric W. Tokars*, for appellant.
*Kent T. Stair, Alan B. Kyman, Douglas Wilde*, for appellee.