## CITY COUNCIL OF AUGUSTA *v.* THARPE.

1. On the trial of an action to recover damages for personal injuries received by one using a street of a city, in consequence of an obstruction therein, the evidence showing not only that the plaintiff received a serious hurt, but that

he suffered much pain, a verdict for three hundred dollars can not be set aside as excessive.

2. Though a particular instruction taken alone may be open to the criticism that it required a given qualification, yet where it plainly appears that elsewhere in the charge this very qualification of the doctrine laid down in such instruction was so distinctly and clearly stated as that the jury were not misled as to the true law, the giving of the instruction will not require the granting of a new trial.

3. It is the duty of the authorities of a city to keep and maintain the sidewalks thereof in a reasonably safe condition for public use, and this duty is not performed by keeping in such condition that part of the sidewalk only which is most generally used.

4. Whether a wire stretched along the outer edge of a sidewalk about four feet from the ground, and fastened to two poles, by contact with which the plaintiff was injured, was an obstruction to the safe use of the street, was a question of fact for the jury to determine under proper instructions from the judge.

5. Relatively to the city it was not error for the judge to charge the jury that if the plaintiff (a child of twelve years) was a passenger upon the street, and was injured by an obstruction on the street while playing thereon, and such playing was simply incidental, it would be no bar to his recovery if the city was negligent.

6. It was not error to refuse to charge the jury that one passing from the street to the sidewalk or the reverse (in a city), at any point other than a crosswalk, has no reason to expect a safe passage-way, and must therefore do so at his own risk.

7. The verdict was supported by the evidence.

Argued January 30, — Decided March 28, 1901.

Action for damages. Before Judge Eve. City court of Richmond county. April 3, 1900.

*William H. Barrett*, for plaintiff in error.
*A. S. Ulm* and *Ganahl & Ganahl*, contra.

LITTLE, J. Robert Tharpe by his next friend brought an action against the City Council of Augusta, to recover damages for personal injuries alleged to have been sustained by him by reason of defendant's negligence, in the following manner: On December 28, 1898, while on one of the streets of the City of Augusta, he had occasion to cross the street, as he had a right to do; and while doing so he ran against a wire, projecting from which were many sharp and dangerous points similar to a barbed wire, which defendant had, for many months prior to this time, allowed to remain stretched along the edge of the sidewalk. By his contact with the wire he was severely cut and otherwise injured, suffered much pain therefrom, and was kept from his work and school, and his face permanently dis-

figured.   The defendant denied generally that it was in any manner negligent.   The evidence for the plaintiff made the following case:   Plaintiff was twelve years old, and was engaged in the business of delivering a newspaper called the Herald to its subscribers in certain portions of the city every afternoon, from which he derived an income.   On the day he was injured he was at the newspaper office, with several companions, waiting for the issue of the paper. Plaintiff with two others went across the street and stood a few minutes.   While there he playfully struck one of his companions and "sprung around" and started to cross the street to the Herald office.   As he did so he ran against and struck this wire, which was fastened to two telegraph poles four or five feet apart, and about the height of plaintiff's cheek from the ground.   This wire was stretched along the curbing and parallel to it.   There was no regular street-crossing where it was situated, though a few feet from its end there was a crossing from the street to a blacksmith-shop on that side of the street.   The sidewalk was six or eight inches higher than the street at this point.   The wire was from ten to twenty feet from where his companion was standing when plaintiff struck him.   The sidewalk was eight or ten feet wide.   The evidence as to the condition of the wire was conflicting.   One of the witnesses testified that there were several wires twisted together and full of sharp points, "mostly points and not much wire"; another that it was made of several strands of slick hay-wire twisted together with a stick.   In walking along the sidewalk one would not strike this wire unless he attempted to cross the street, and it was probably placed there to keep horses from backing on the sidewalk.   It had been there eight or nine months, though plaintiff did not know it was there.   Another child had previously been injured by the same wire.   It was removed, the day after the accident, at the request of a policeman.   Plaintiff was seriously injured in the face and head, and kept from school and work for several weeks, suffering in the meantime considerable pain.   The details of his injuries were fully set forth, and it appeared from the evidence that his face would be permanently disfigured by a scar.   The jury returned a verdict for the plaintiff for three hundred dollars.   Defendant filed its motion for a new trial, which being overruled, it excepted.

1. One of the grounds on which a new trial was sought was that the verdict was excessive.   The evidence having shown not

only serious hurt to the plaintiff, but also that he suffered much from pain, it can not be ruled that the verdict was excessive.

2. It is also alleged that the following instruction given to the jury was error: "If you find from the evidence that the plaintiff was a traveler upon the streets of Augusta and that while there he was injured by an obstruction, and that under the evidence it was negligence on the part of the city to permit it to be there, then it would be your duty to return a verdict for the plaintiff." The error alleged is, in not accompanying this with a further charge that plaintiff would be defeated if it was shown that he could have avoided the injury by the use of ordinary care, and in not stating that it was necessary for the city to have known, either actually or presumptively, of the existence of the obstruction before it would have been liable. While as a proposition of law the charge, to be entirely sound, needed to be qualified, we find that in his general charge the judge fully instructed the jury on the law applicable to the legal propositions which it is contended he should have incorporated in the particular part of the charge on which error is assigned; and therefore the objection made can not be sustained.

3. The following charge is also alleged to have been erroneous: "The duty of the city is to keep a sidewalk reasonably safe for public use. That extends to all of the sidewalk intended for travel by the public as a thoroughfare, and is not confined to keeping in a safe condition a separate part only of the sidewalk which happens to be most generally used." The specific error of this charge as claimed is, that it instructed the jury that it was incumbent on the city to keep that portion of the sidewalk immediately along the curbing, whether used longitudinally or laterally, reasonably safe for public use. We do not think that the judge erred in giving this charge. It was in the language which this court used in making its ruling, in the case of the *City of Atlanta* v. *Milam*, 95 *Ga.* 135, and contains, as we think, a correct proposition of law. Mr. Jones in his work on the Negligence of Municipal Corporations, § 77, on authority states the rule to be that "The whole of the street must be kept ready for use, because if any portion is neglected there is probable danger that some member of the public will be injured, and the authorities should not expose individuals to this danger." And in section 78 of the same work the author says: "The municipality should not allow obstructions or excavations to

adjoin the traveled way which will render its use unsafe and dangerous." Mr. Tiedeman in his work on Municipal Corporations, § 300, states the rule thus: "The public are entitled to the use of the whole street from side to side and from end to end.". In Elliott on Roads & Streets, § 613, the author says: "Cities are liable for negligently permitting unguarded excavations near the line of the road or street, as well as for negligently allowing obstructions likely to cause injury to be placed upon the way or near the line. . . It may be said in a general way . . that cities and incorporated towns are liable for any wrongful act which makes the use of the way unsafe, whether it is done by the corporation itself or by a third person." This court, in the case of the *Mayor & Council of Atlanta* v. *Perdue*, 53 *Ga.* 607, in dealing with the question said: "The general rule of law is that a municipal corporation is bound to keep its streets and sidewalks in a safe condition for travel in the ordinary modes, by night as well as by day, and if it fail to do so, it is liable for damages for injuries sustained in consequence of such failure." See also *Mayor etc. of Milledgeville* v. *Cooley*, 55 *Ga.* 17; *W. & A. R. Co.* v. *City of Atlanta*, 74 *Ga.* 774. In the *Milam* case, cited above, Mr. Justice Lumpkin, in delivering the opinion of this court, said: "While, of course, in most American cities, water-plugs, telegraph and telephone poles, trees, and other things are allowed upon the margins of sidewalks, and pedestrians therefore are not expected to use such portions of the same as are occupied by these obstructions, still there can be no doubt, under the rules of law now settled by repeated adjudications in this and other jurisdictions, that the city authorities must keep in a reasonably safe condition all parts of its sidewalks which are intended to be used by the public. It may often happen that in a particular locality a comparatively narrow portion of a sidewalk, on either side or in the middle of it, is much more generally used than other portions of the same; but this does not relieve the municipal authorities from liability for negligence in permitting dangerous obstructions to be continuously maintained in places upon sidewalks over which the public have a right to pass, merely because those places are not so much used as others."

4. We are not able to say that a wire, such as was shown by the evidence, stretched along the margin of a sidewalk, which is a part of a public street, would not be a dangerous obstruction, or that

it might not even constitute a nuisance. That this particular wire was a dangerous obstruction is shown, not only by the injury which was inflicted on the plaintiff, but also by the additional fact that another child had previously been injured by running against it. After all, whether any given obstruction on or near a sidewalk is dangerous, and whether a failure to remove it would constitute negligence on the part of the city, are questions of fact which the jury must determine. In the work of Mr. Jones, previously cited, he says (§ 78): "Whether in any locality a traveled way was necessary, and whether the condition of the roadway outside of the traveled track was such as to render the road itself unsafe, would be for the jury to decide upon a consideration of all the circumstances surrounding the case." The compilers of 15 Am. & Eng. Enc. L. (2d ed.) 440, cite a number of cases to support the proposition, that whether a highway is or is not defective is one of fact for the jury, acting under proper instructions from the court. To the same effect see Tiedeman on Municipal Corporations, § 346, p. 695. In the case of the *City Council of Augusta* v. *Hafers*, 59 *Ga.* 151, this court ruled that whether the system of the city in regard to allowing cellars on its sidewalks in front of business houses was reasonably calculated to insure the safety of those who traveled on them by day or night was a question of fact; and therefore for the jury; and in *Dempsey* v. *Rome*, 94 *Ga.* 420, where the plaintiff was injured by getting his foot caught in a hole which had existed for two weeks or longer in a plank crossing, it was ruled that the question of the negligence of the authorities in leaving the crossing in that condition was one for submission to the jury. See also *Enright* v. *Atlanta*, 78 *Ga.* 288, and *City of Atlanta* v. *Milam*, supra.

5. It is also further urged as a ground of error that the charge of the judge did not fairly state the law as to a city's liability towards one using the street for the purpose of play, and as it was shown by the evidence in this case that the plaintiff was using the street at the time of his injury for a playground, he can not recover, the principle of law applicable being that, if one is injured while so using a street, the city is not liable unless the playing is merely incidental to his use of the way as a passenger. We do not understand this contention to be a correct statement of the law. The rule is thus stated by Mr. Jones in his work previously referred to, § 90: "The duty to keep the sidewalks reasonably safe is not con-

fined at common law to travelers. . . The general rule is that every person who uses a sidewalk for any purpose for which sidewalks are designed is within the obligation of the duty. . . The common law does not draw a distinction between the exercise and play of young children, and whether the child is using the street for exercise or play he is entitled to his right of action if he is injured by the negligence of the corporation." The New England States and some others have by statute adopted a different rule as to the liability of a city for damages sustained by a child who is injured while playing on the streets. " But even under those statutes, if the child is actually traveling on the highway, the fact that incidentally he is engaged in play or amusement does not prevent recovery." 15 Am. & Eng. Enc. L. (2d ed.) 464 (d), and authorities there cited. See also Gulline *v.* Lowell, 144 Mass. 491; Reed *v.* Madison, 17 L. R. A. 734 (5), and cases cited. The trial judge in effect gave in charge the stricter rule of the New England States, but even under its application the jury determined the facts in favor of the plaintiff, practically finding that the use of the streets in this instance was not merely for play, but that the play was only incidental; and we think the evidence supports the verdict.

6. It is also alleged that the judge erred in refusing to charge a written request in the following language: " Any one passing from the street to the sidewalk or the reverse at any point other than a crosswalk has no reason to expect a safe passageway, and must therefore do so at his own risk." The principle embodied in the request is not sound as a matter of law, when applied to unauthorized obstructions in a street. As a rule a municipal corporation has no right or power to place any obstruction in a street or permit the same to be done; on the contrary it is its duty to prohibit it, and to remove any obstructions so placed. The same is true as to sidewalks, which are but parts of the street. The traveler has the right to use the street by passing across it at a point where there is no crosswalk, and in doing so he does assume a greater risk from passing vehicles and animals using the main thoroughfare than he does when passing over a crosswalk (*Brunswick Ry. Co.* v. *Gibson*, 97 *Ga.* 498 – 9), but he does not in doing so assume any greater risk from obstructions other than those necessary for the use of some public utility, such as water-plugs, telegraph and telephone poles, and the like. Even a telegraph or telephone wire, placed so low on a side-

walk or street that a person using the street might come in contact with it, would be an obstruction; and if this be true as to one of these general conveniences erected for the use of the public, what can be said of the erection of a wire having sharp points projecting from it, strung longitudinally along the sidewalk, within four feet or thereabouts from the ground, intended to serve no public purpose whatever? There was, we think, no error in refusing to charge as requested.

We find no error in the grounds of the motion not specifically dealt with; and, there being sufficient evidence to sustain the verdict, the judgment below is

*Affirmed. All the Justices concurring.*