## A94A1417. BELLSOUTH TELECOMMUNICATIONS, INC. v. HELTON.
### (451 SE2d 76)

JOHNSON, Judge.

B. L. Helton filed this action against BellSouth Telecommunications, Inc. ("BellSouth"), when a rock masonry retention wall located at the rear of Helton's property collapsed 14 months after the installation of a utility pole and underground cable near the wall. Following a bench trial, the court entered judgment for Helton. BellSouth appeals.

1. BellSouth contends the trial court erred in finding the company which it hired to install the equipment was not an independent contractor. "An employer generally is not responsible for torts committed by his employee when the employee exercises an independent business and in it is not subject to the immediate direction and control of the employer." OCGA § 51-2-4; see *Slater v. Canal Wood Corp. of Augusta*, 178 Ga. App. 877, 878 (1) (345 SE2d 71) (1986). "The issue in determining whether one was an employee or an independent contractor is whether the employer retained the right to exercise control over the time, place or manner of the work performed." (Citations and punctuation omitted.) *Kimble v. BHM Constr. Co.*, 193 Ga. App. 441, 442 (388 SE2d 40) (1989); see also OCGA § 51-2-5 (5). "Where the contract of employment clearly denominates the other party as an independent contractor, that relationship is presumed to be true unless the evidence shows that the employer assumed such control." (Citations and punctuation omitted.) *Ledbetter v. Delight Wholesale Co.*, 191 Ga. App. 64, 66 (1) (380 SE2d 736) (1989); *McGuire v. Ford Motor Credit Co.*, 162 Ga. App. 312, 313 (290 SE2d 487) (1982).

The record in this case shows that the contract between Ansco and BellSouth specifically denominated Ansco as an independent contractor. However, the same contract allowed BellSouth a significant amount of control over the time, method and manner of executing the work. For example, BellSouth retained the right to direct the order in which the work was to be done and the times at which the work was to be done. Further, BellSouth reserved the right to request the removal of any Ansco employees and to have a representative continuously at the work site. Ansco also expressly agreed to be guided by the reasonable recommendations of the representative. BellSouth de-

vised the plans and supplied some of the materials and hardware for the installation. Although there were also contractual provisions which would support a contrary conclusion, we cannot hold that the trial court, acting as the trier of fact, erred in finding for Helton on this issue. Under the "any evidence" rule, we must affirm the trial court's judgment. *Williamscraft Dev. v. Vulcan Materials Co.*, 196 Ga. App. 703, 704-705 (2) (397 SE2d 122) (1990).

2. BellSouth contends the trial court erred in denying its motion for involuntary dismissal because Helton failed to prove it was negligent. While there is evidence which would support a contrary ruling, there is also evidence to support the trial court's denial of BellSouth's motion. For example, as discussed in Division 1 above, there was evidence that BellSouth planned and retained control over Ansco's installation of BellSouth's equipment. In addition, the evidence included a chemical engineer's testimony that the wall's failure did not appear to be caused by old age but by trenching and rain. A structural engineer testified that digging and backfilling so close to a wall is risky and that extreme caution must be exercised so as not to damage the wall. He offered his opinion that the digging probably resulted in the soil becoming less compact and more susceptible to water saturation, which saturation produced lateral forces against the wall and caused it to fail. The witness testified the wall might have lasted another 46 years in the absence of this trauma. Another witness testified to seeing the wall shake as the backhoe was being operated during the construction project. An adjoining landowner testified the wall became curved two to three months after the trenching occurred. "[I]n cases of this nature, the trial judge sits as trier of fact, and his findings are analogous to the verdict of a jury and should not be disturbed if there is any evidence to support them." (Citations and punctuation omitted.) *Haehn v. Alheit*, 212 Ga. App. 252, 253 (1) (441 SE2d 529) (1994). As there was evidence to support the trial court's finding of negligence, we find no error in its denial of BellSouth's motion. For the same reason, BellSouth's third and fourth enumerations, alleging there was no evidence of negligence or causation, are without merit.

3. BellSouth also argues the trial court erred in applying the doctrine of res ipsa loquitur in this case. For the doctrine of res ipsa loquitur to apply, the plaintiff must show that the defendant had exclusive control of the thing doing the damage, the accident was of a kind which does not ordinarily happen without negligence and the damage was not due to the plaintiff's actions. *U. S. Fidelity &c. v. J. I. Case Co.*, 209 Ga. App. 61, 64 (3) (432 SE2d 654) (1993). We note that, as discussed in Division 2 above, there was evidence from which the trial court could have found negligence without applying the doctrine of res ipsa loquitur. Nonetheless, we believe the elements of the

doctrine have been satisfied. There was evidence the wall would not have failed in the manner in which it did in the absence of negligence and that the trauma to the soil and wall was caused by instruments which were within the exclusive control of BellSouth, through Ansco. There was no evidence that Helton's actions caused the damage. Because there is evidence to sustain the trial court's findings, we will not disturb them. See *Venture Design v. Original Appalachian Artworks*, 197 Ga. App. 432, 434 (1) (398 SE2d 781) (1990).

4. BellSouth contends the trial court erred in allowing Helton to testify on redirect that an unidentified BellSouth employee admitted to him the cable was installed by BellSouth. At trial, in response to BellSouth's objection, counsel for Helton argued the testimony was not offered for the truth of the matter asserted, but to explain Helton's conduct in not taking any action when the cable was initially installed. The trial court allowed this testimony as explaining Helton's conduct. See *Avery v. Colonial Pipeline Co.*, 213 Ga. App. 388, 391 (2) (444 SE2d 363) (1994). While at first glance Helton's conduct may not seem relevant, it could indeed be relevant to the issue of whether his actions contributed to the damage, a relevant inquiry in a case based on res ipsa loquitur. See *U. S. Fidelity &c.*, supra. Therefore, we cannot say that the trial court erred in allowing the testimony. Furthermore, the trial court already had before it BellSouth's admission in its answer and the pre-trial order that it caused the cable to be installed. Moreover, as discussed in Division 1 above, there was other evidence from which the trial court could conclude BellSouth, in the absence of an independent contractor relationship, was responsible for the installation of the cable. Thus if any error occurred, it was harmless. See *Wilson v. Southern R. Co.*, 208 Ga. App. 598, 605 (4) (431 SE2d 383) (1993).

5. BellSouth contends the trial court erred in basing its measure of damages upon the diminution in value of the real property rather than upon the cost of repairing or replacing the wall. We agree.

While the correct measure of damages for injury to realty itself is the difference in value of the property before and after the injury, the appropriate measure of damages if the injury is solely to the structure or building is the cost of repairs. *Oglethorpe Realty Co. v. Hazzard*, 172 Ga. App. 98, 100 (4) (321 SE2d 820) (1984). In *Hall v. Chastain*, 246 Ga. 782 (273 SE2d 12) (1980), where a brick wall surrounding property was damaged when struck by a car, the Supreme Court held that the proper measure of damages was the cost of restoring the wall. Id. at 784 (3). The case relied upon but misapplied by the trial court on this issue, *NEDA Constr. Co. v. Jenkins*, 137 Ga. App. 344 (223 SE2d 732) (1976), held the jury's award of damages based on the cost of repairing a damaged house was proper. In *NEDA Constr. Co.*, this court stated "[t]he value of the property destroyed, or the cost of re-

storing or replacing such property, is the proper measure of damages for the destruction of buildings, fences, and other improvements, which may at once be replaced, where the exact cost of restoring the property destroyed is capable of definite ascertainment, and where there is no damage to the realty itself." (Citations and punctuation omitted.) Id. at 349-350 (6). There was no damage to the realty in this case, only to the wall. Helton testified the wall was being reconstructed at the time of trial at a cost of approximately $56,000. Moreover, Helton stated in his proposed pre-trial order (which was adopted by the court) that the proper measure of damages was the cost of rebuilding the wall. Nonetheless, the court provided in its judgment that the proper measure of damages was the diminution in value of the real property which, according to Helton's testimony, amounted to $80,000. In so doing, the trial court erred. The case is therefore remanded for the trial court to reconsider the evidence on the issue of damages and to enter judgment based upon the proof of the cost of reconstruction of the wall.

*Judgment affirmed in part, reversed in part and case remanded with direction. Beasley, P. J., concurs. Andrews, J., concurs in judgment only.*

DECIDED NOVEMBER 15, 1994 —
RECONSIDERATION DENIED DECEMBER 5, 1994 — 

*Shivers, Johnson & Wilson, Wayne C. Wilson, Kimberly A. Johnston, Dan J. Colley,* for appellant.
*Dock H. Davis,* for appellee.