A97A0063. WILLIAMS v. DEPARTMENT OF CORRECTIONS.
(481 SE2d 272)

ELDRIDGE, Judge.

Appellant sued appellee, the Georgia Department of Corrections

("the Department"), for injuries sustained when the tractor he was operating along a highway right-of-way overturned. At the time of the incident, appellant was serving a sentence as a state prisoner in a jail operated by the Unified Government of Athens-Clarke County ("the county"), which had a contract with the Department to house state prisoners for $10 per day. The supervisor overseeing the mowing operations, Officer Mike Harris ("Harris"), was an employee of Athens-Clarke County Street and Road Department.

The trial court granted summary judgment to the Department upon a finding that the county was an independent contractor with the Department, so that the Department was not liable for the acts or omissions of county employees. Appellant asserts that the grant of summary judgment was error.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A [moving party] may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of [the nonmoving party's] case. . . . If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e)." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

However, "the party opposing the motion is to be given the benefit of all reasonable doubts and all favorable inferences that may be drawn from the evidence." *King v. Crain-Daly Volkswagen*, 207 Ga. App. 583, 584 (428 SE2d 586) (1993). Further, "[t]o warrant the entry of summary judgment, the undisputed facts 'should show the right of the [moving party] to a judgment with such clarity as to leave no room for controversy, and they should show affirmatively that the [non-moving party] would not be entitled to recover under any discernible circumstances.' [Cit.]" *Allen & Bean, Inc. of Ga. v. American Bankers Ins. Co. of Fla.*, 153 Ga. App. 617, 618 (266 SE2d 295) (1980).

The essential elements of a cause of action for negligence in Georgia include the following: " ' "(1) [a] legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and, (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty." ' " *Brown v. RFC Mgmt.*, 189 Ga. App. 603, 604 (376 SE2d 691) (1988), quoting *Bradley Center v. Wessner*, 250 Ga. 199, 200 (296 SE2d 693) (1982). Pretermitting whether a breach of duty, causation,

and resulting damage can be proved by appellant, we turn to the following issues on appeal: whether Harris, as a county employee, was an agent or independent contractor of the Department, and if Harris is determined to be an independent contractor, whether the duty owed by the Department to ensure the safety of inmates was delegable to county authorities under contract.

Appellant asserts that the trial court erred in granting summary judgment to the Department upon a finding that Harris was an independent contractor and not an "agent" of the state as contemplated by the Georgia Tort Claims Act ("GTCA"), OCGA § 50-21-20 et seq. Prior to 1994, the GTCA waived sovereign immunity for "state officers and employees while acting within the scope of their official duties or employment," and included in the definition of officers and employees "agent[s] of the state, elected or appointed officials, law enforcement officers, and persons acting on behalf or in service of the state in any official capacity, whether with or without compensation, but the term does not include an independent contractor doing business with the state."[1] OCGA §§ 50-21-22 (7); 50-21-23 (a).

Appellee, through responsive pleadings and affidavits, has affirmatively denied that Harris was an agent of the Department of Corrections, asserting instead that he was an employee of the county roads department and an independent contractor of the Department, so that the state's sovereign immunity would operate to shield the Department from liability. However, if Harris was an agent for the Department acting within his official duties in supervising the inmates, sovereign immunity was waived by OCGA § 50-21-22 (7). Since appellee has presented evidence in support of its motion for summary judgment, the burden shifts to appellant to present evidence that establishes a jury issue about Harris' employment status.

The GTCA does not define the terms "agent" or "independent contractor." However, under the Code's general contract provisions, an independent contractor is one who "exercises an independent business and . . . is not subject to the immediate direction and control of the employer." OCGA § 51-2-4. "The chief test to be applied in determining whether a person is employed as a servant or as an independent contractor . . . continues to be whether the contract gives, or the employer assumes, the right to control the time, manner, and method of the performance of the work, as distinguished from the right merely to require certain definite results in conformity with the contract." *Bowman v. C. L. McCord Land &c. Dealer*, 174 Ga. App. 914, 915 (331 SE2d 882) (1985); see also *Perry v. Soil Remediation*,

---

[1] OCGA § 50-21-22 (7) originally defined "state officer or employee" to include "agents" of the state, but was amended in 1994 to remove agents from the OCGA § 50-21-23 (a) waiver of sovereign immunity.

221 Ga. App. 386 (471 SE2d 320) (1996) (holding that "[t]he key is to determine whether the contractor is truly independent or whether he is simply the employer's alter ego").

Appellee asserts that Harris was a county employee, and therefore an independent contractor, while supervising state inmates during road maintenance work activities. They apparently assert that the state relinquishes control of the state inmates once they are assigned to county facilities.

However, OCGA § 42-5-53 (b) states that county correctional facilities are subject to the "supervision and control" of the Department and Board of Corrections. Further, the state Board of Corrections, by its rules and regulations, clearly and conclusively establishes the amount of control that the Department retains over county facilities, and therefore, employees. The Georgia Administrative Code lists, in extensive detail, rules, regulations, and requirements governing the security, discipline, housing, feeding, clothing, health care, and safety of state prisoners. Ga. Admin. Code §§ 125-2-3-.04; 125-3-1-.02; 125-3-1-.05; 125-3-2-.02; 125-3-2-.07; 125-3-2-.08; 125-4-3-.01 through 125-4-3-.04; 125-4-4-.01 through 125-4-4-.12. Violations for which an inmate may be disciplined are specifically listed in Ga. Admin. Code § 125-3-2-.04. Further, the Code establishes specific, uniform rules governing work conditions for inmates on work details, including regulating the amount of security to be provided; regulating the maximum number of hours per week an inmate may work; regulating the number and duration of lunch and other breaks; prohibiting non-emergency work on Sundays; prescribing holidays; and prohibiting work in certain weather conditions. Id. §§ 125-3-5-.01 through 125-3-5-.06. The Code also establishes guidelines for responding to an inmate emergency, specifically requiring such injuries to be reported to the Department and noting that the Department will provide "guidance . . . as to further action." Id. § 125-4-4-.10. Finally, the regulations assign to the Department financial responsibility for payment of emergency medical care when an inmate becomes ill or injured while in a county facility. Id. § 125-4-4-.01 (b).

Such specific, expansive regulations raise an issue for the jury as to whether or not the Department controlled the "time, manner, or method" of inmate safety, security, work requirements, and supervision, or whether Harris was, in fact, an independent contractor of the state. It was error to grant summary judgment on the facts of the case sub judice.

Even if Harris was determined to be an independent contractor of the state, the Department could still be responsible for his negligence. Generally, an employer is not liable for the negligence of an independent contractor; however, exceptions exist when the work to

be done involves a non-delegable duty which is "dangerous to others [no matter how] carefully performed," when the work is a "violation of a duty imposed by statute," or in other limited instances. OCGA § 51-2-5 (2), (4); see also *St. Paul Cos. v. Capitol Office Supply Co.*, 158 Ga. App. 748 (282 SE2d 205) (1981).

In the case sub judice, appellant argues that the state has a statutory, non-delegable, affirmative duty to protect the health and safety of prisoners. See OCGA § 42-2-11 (c); see also *Schmidt v. Adams*, 211 Ga. App. 156, 158 (438 SE2d 659) (1993) (holding that "[t]he provision of medical aid [to inmates] . . . is so essential a part of the government's duty that it is undelegable . . ."). This Court agrees with appellant, who is further supported by the United States Supreme Court, which stated in *DeShaney v. Winnebago County Dept. of Social Svcs.*, 489 U. S. 189, 199-200 (109 SC 998, 103 LE2d 249) (1989), that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. [Cit.] . . . The rationale for this principle is simple enough: when the State by affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs — e.g., food, clothing, shelter, medical care, and reasonable safety — it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. [Cits.] The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf. [Cit.]"

It is against the public interest to allow statutorily-defined duties, particularly those related to the protection of the health and safety of citizens, to be assigned away by contract in an attempt to relieve the state of liability for any breach of its duties. Indeed, in justifying the need for some sovereign immunity, the General Assembly stated that "state government must provide a broad range of services and perform a broad range of functions . . . regardless of how much exposure to liability may be involved." OCGA § 50-21-21 (a). Therefore, we hold that the Department has a nondelegable duty to protect the safety and health of state inmates that cannot be relieved by employing independent contractors.

Further, the Department has the authority to require inmates to "labor on the public roads or public works or in such other manner as the [Board of Corrections] may deem advisable" and may contract with "other political subdivision[s] . . . for the construction, repair, or maintenance of roads, bridges, public buildings, and any other public works by use of penal labor." OCGA § 42-5-60 (e). In the case

sub judice, the evidence indicates that the state's authority has been assigned to the county, which housed appellant under a contract with the Department and utilized appellant and his fellow inmates to cut the grass along highway rights-of-way. A jury could find that the act of cutting wet grass with a tractor on a steep incline could be considered an inherently dangerous task that placed appellant in harm's way, so that the Department is responsible for the negligence of Harris as he directed and supervised appellant, whether or not Harris has been labeled an "independent contractor." See *McMullan v. Georgia Girl Fashions*, 180 Ga. App. 228, 229-230 (348 SE2d 748) (1986) (holding that a label assigned by contract "is not necessarily controlling for we may look to the contents [of the contract] to determine the character of the relationship created").

Finally, regardless whether Harris is an independent contractor for the Department, there is a jury issue as to whether or not he was also an agent for the Department. Serving concurrently as an agent and as an independent contractor is not mutually exclusive. The Code defines the principal and agent relationship as one which "arises whenever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." OCGA § 10-6-1. "A ratification may be express or implied from the acts or silence of the principal" and "once made may not be revoked." OCGA § 10-6-52. "The agent's authority shall be construed to include all necessary and usual means for effectually executing it," and the "principal shall be bound by all the acts of his agent within the scope of his authority." OCGA §§ 10-6-50; 10-6-51. Therefore, if the Department authorized or ratified the acts of Harris, he could be considered an agent for the Department, regardless of his status as an independent contractor.

"Questions of the existence and extent of an agent's authority are generally for the triers of fact. . . . When an alleged principal, by acts or conduct, has knowingly caused or permitted another to appear as his agent, he will be estopped to deny the agency, to the injury of third persons. . . ." *Allen & Bean, Inc. of Ga.*, supra at 619; see also *Turner Broadcasting System v. Europe Craft Imports*, 186 Ga. App. 286, 288 (367 SE2d 99) (1988), quoting *Warnock v. Elliott*, 96 Ga. App. 778, 789 (101 SE2d 591) (1957) (holding that "[i]f there is *any evidence* tending to establish the agency, the questions should be submitted to a jury").

In responding to appellee's assertions that Harris was not an agent of the Department, appellant has pointed to evidence that appellant would have been disciplined, presumably by the Department, for refusing to act on Harris' orders; such discipline might have included being placed in solitary confinement or losing privileges. This is affirmative evidence sufficient to create a jury issue as to

whether Harris was, in fact, an agent of the Department.

However, in granting the summary judgment for the Department, the trial court mistakenly relied on this Court's holding in *Shivers v. Barton & Ludwig, Inc.*, 164 Ga. App. 490, 491 (296 SE2d 749) (1982), which states that "where the only evidence that a person is an agent of another party is the mere assumption that such agency existed, or an inference drawn from the actions of that person that he was an agent of another party, such evidence has no probative value and is insufficient to authorize a finding that such an agency exists. [Cits.]" *Shivers*, supra, involved a transaction where the injured third parties were voluntary actors entering into a transaction with the apparent agent of a specific, intended party. Further, at issue in *Shivers*, supra, was whether the purported agent's statements or actions, without additional evidence, are sufficient to create an agency.

The case sub judice, in contrast, involves an appellant who was an unwilling actor, a prisoner that was subject to discipline if he did not follow the directions of his guard, Harris. Further, it was the Department, not Harris, that created the perception that Harris was, indeed, a guard working on behalf of the state by assigning appellant to the Athens-Clarke County facility and allowing appellant, while in custody, to be subjected to work on a road maintenance crew.

Notably, it is clearly in the state's best interest for inmates to perceive road crew supervisors as guards; without such perceptions, inmates might mistakenly believe that they are free to leave the work site at will or otherwise disregard direct orders from the supervisors. By encouraging such perceptions to develop, the Department has ratified the actions of the county and, at least for summary judgment purposes, should be estopped from denying that Harris was an agent of the state when he was supervising a road crew of state prisoners.

Because appellant has presented some evidence which supports the inference that Harris was acting as an agent on behalf of the Department in his capacity as guard over the road crew, this Court holds that the issue of whether Harris was an agent or independent contractor of the Department, or both, should have been submitted to a jury.

*Judgment reversed. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 11, 1997 —

*Charles H. Brown III*, for appellant.

*Michael J. Bowers, Attorney General, George P. Shingler, Deputy Attorney General, John C. Jones, Senior Assistant Attorney General,*

*David J. Marmins, Assistant Attorney General*, for appellee.