A97A1596. BELL SOUTH TELECOMMUNICATIONS, INC.
v. WIDNER et al.
(495 SE2d 52)

BIRDSONG, Presiding Judge.

Pursuant to the grant of an interlocutory appeal, Bell South Telecommunications, Inc., challenges the denial of its motion for summary judgment in an action brought against Bell South by Betrice and William O. Widner. Mrs. Widner sued Bell South for damages arising from her personal injuries and Mr. Widner sued for his loss of consortium after their car fell into a trench which had been dug across a public road to lay a Bell South telephone cable. The Widners contend they were driving at about 10 to 15 mph when their car came to a sudden stop because the trench collapsed under them. Mrs. Widner alleges that she was injured because of the sudden stop.

Bell South contracted with Brookins, Inc., to lay telephone cable across a county road in Miller County, Georgia. The contract specified that a trench be dug in which to lay the telephone cable and that the ditch be filled to return the road to its proper pre-construction condition as a public road. Brookins then contracted with Pro Grassing & Grading, Inc., to perform the actual work.

Brookins' subcontract with Pro Grassing required Pro Grassing to complete the work specified by Bell South at an agreed-upon price to be paid by Brookins. In the subcontract, Brookins did not retain the right to control or supervise the work of Pro Grassing and did not exercise control or supervision over the time, manner, or method in which Pro Grassing performed the work. Pro Grassing used its own equipment and employees to perform the work. Pro Grassing billed Brookins directly by invoice and Brookins paid Pro Grassing without deductions for payroll or income taxes or other matters. None of Pro Grassing's employees was carried on Brookins' books as employees of Brookins. Although Pro Grassing did work for other companies as well as Brookins, Bell South had no direct contractual relationship with Pro Grassing in this matter.

Initially the Widners filed suit against Bell South and Brookins and Bell South answered and filed a third-party complaint against Pro Grassing. This first action was dismissed, however, and a timely renewal action filed subsequently. In the renewal action, Bell South

moved for summary judgment contending that Bell South was not liable to the Widners for the negligence of its independent contractor. After this motion was denied because the trial court found that material issues of fact remained for trial, the trial court granted Bell South a certificate of immediate review, and upon application to this Court, Bell South was granted an interlocutory appeal. *Held*:

1. The general rule is that an employer is generally not "responsible for torts committed by his employee when the employee exercises an independent business and in it is not subject to the immediate direction and control of the employer." OCGA § 51-2-4. The standards to be considered when determining whether an employer is liable for the negligence of a contractor are set out in OCGA § 51-2-5. Although this list is not exclusive (*Peachtree-Cain Co. v. McBee*, 254 Ga. 91, 93-94 (327 SE2d 188)), the only provision realistically at issue is subsection (5): "If the employer retains the right to direct or control the time and manner of executing the work or interferes and assumes control so as to create the relation of master and servant or so that an injury results which is traceable to his interference."

When the contract between Bell South and Brookins is construed properly, it establishes that Brookins was an independent contractor and not an employee of Bell South. None of the traditional measures through which improper control is maintained are present (see OCGA § 51-2-5), and the contract provides for Brookins to have independence in the manner in which it performed the work.

"The true test whether a person employed is a servant or an independent contractor is whether the employer, under the contract, whether oral or written, has the right to direct the time, the manner, the methods, and the means of the execution of the work, as contradistinguished from the right to insist upon the contractor producing results according to the contract, or whether the contractor in the performance of the work contracted for is free from any control by the employer of the time, manner, and method in the performance of the work. The right to control the manner and method means the right to tell the employee how he shall go about doing the job in every detail, including what tools he shall use and what procedures he shall follow. The right to control the time of doing the job means the right to control the hours of work." (Citations and punctuation omitted.) *RBF Holding Co. v. Williamson*, 260 Ga. 526 (397 SE2d 440).

Therefore, although not necessary for disposition of this appeal, Brookins was an independent contractor.

In this case, the dissent's analysis focuses too much on the relationship between Bell South and Brookins, and in so doing disregards the fact that the work was performed by Pro Grassing, a subcontractor of Brookins. The affidavit of Mr. Brookins, which was not rebutted by the Widners, describes his contract with Pro Grassing,

and that contract completely forecloses any idea that Brookins retained the right to control the time and manner of work or that Brookins interfered with or assumed control of Pro Grassing so that a master and servant relationship was created between them. "A denial of the existence of an agency relationship may constitute an uncontradicted fact which will sustain a motion for summary judgment. Likewise, the bare denial of the particular agency relationship of employer-employee, made by a purported party to the relationship, is a statement of fact sufficient to support a motion for summary judgment in an action based on the doctrine of respondeat superior. In such circumstances the adverse party may not rest on his pleadings, but by response must set forth specific facts revealing a genuine issue for trial. Exhibiting the mere possibility of a control situation falls short of the specific facts required." (Citations and punctuation omitted.) *McDaniel v. Peterborough Cablevision, Ltd.*, 206 Ga. App. 437, 439 (425 SE2d 424). Consequently, as Pro Grassing, the entity that performed the work in question, was an independent contractor of Brookins, Pro Grassing could not be an employee of Bell South so as to impose liability upon Bell South in this case. Thus, the effect of the dissent would be to make Bell South liable for the work of an independent contractor once removed.

2. Further, unquestioned reliance on *Bell South Telecommunications v. Helton*, 215 Ga. App. 435, 436 (1) (451 SE2d 76), is misplaced. First, *Helton* is a two-judge case, and under the rules of this Court is physical precedent only. Court of Appeals Rule 33 (a). Second, and perhaps more importantly, *Helton* did not construe the contract at issue, and did not hold that the contract created liability under OCGA § 51-2-5 (5). Instead, *Helton* was a review of a trial court's decision after a bench trial under the any evidence standard. The import of that review on this case is shown by the following: "Although there were also contractual provisions which would support a contrary conclusion, we cannot hold that the trial court, acting as trier of fact, erred in finding for Helton on this issue. Under the 'any evidence' rule, we must affirm the trial court's judgment. [Cit.]" *Helton*, supra at 436. Third, in *Helton* the work was not performed by a subcontractor of the independent contractor with which Bell South contracted to perform the work.

Therefore, *Helton* does not control the result in this case, and review of the contracts involved to determine the legal relationships of the parties was required. Under the contracts at issue, Bell South was not responsible for the negligence of Brookin's independent contractor, Pro Grassing.

3. Moreover, as this Court does not have the authority to disregard controlling Supreme Court of Georgia precedent, we are required to follow *Dekle v. Southern Bell Tel. &c. Co.*, 208 Ga. 254 (66

SE2d 218), even though the dissent may now feel it is out of date or for some other reason should not be followed. The decisions of the Supreme Court shall bind all other courts as precedent. Ga. Const. of 1983, Art. VI, Sec. VI, Par. VI. Therefore, until the Supreme Court reverses *Dekle* we must follow the dictates of that case.

Moreover, the dissent's effort to distinguish *Dekle* must fail; the distinctions raised are not differences. To say that different legal principles apply because one plaintiff was a pedestrian and another was in a vehicle ignores the underlying legal basis for the *Dekle* decision.

Also, the increased legislative control over the activities of public utilities working in public rights-of-way, without altering the rule of *Dekle* shows the opposite intent from that which the dissent suggests. "All statutes are presumed to be enacted by the General Assembly with full knowledge of the existing condition of the law and with reference to it, and are therefore to be construed in connection and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence, and their meaning and effect is to be determined in connection, not only with the common law and the Constitution, but also with reference to other statutes and decisions of the courts. [Cits.]" *Peachtree-Cain Co. v. McBee*, supra at 93. Therefore, the General Assembly's legislative activity without changing *Dekle* is evidence of an intent to maintain the status of the law, and not change it. "There is no peculiarity in contracts for the performance by independent contractors of work upon a highway which distinguishes them from ordinary contracts, and the general rule of the immunity of the employer in such cases applies with equal force as to other work. The court should always follow and never precede the legislative department of government in the evolution of the law." *Dekle*, supra at 260.

The dissent's conclusion that utility work on the public highways is of such a nature that liability should be imposed on Bell South because of work performed by an independent contractor is contrary to the holding in *Dekle*. Therefore, we cannot adopt this reasoning.

4. Finally, the dissent miscomprehends the basis for allowing recovery directly from a public utility whose independent contractor damages property in the exercise of a taking under eminent domain but prohibiting such direct recovery in other cases. The basis is not the nature of the entity damaged, but the fact that one injury arises from a constitutional taking and the other injury arises from a traditional tort.

Therefore, as we find the trial court erred by denying Bell South's motion for summary judgment, the trial court's order is reversed and the case remanded with direction to enter summary judgment in favor of Bell South.

*Judgment reversed with direction. Andrews, C. J., Pope, P. J., Johnson, Blackburn and Ruffin, JJ., concur. Eldridge, J., dissents.*

ELDRIDGE, Judge, dissenting.
I respectfully dissent.
Bell South is a public utility or a related entity, operating under a certificate of public convenience granted by the Georgia Public Service Commission allowing it, or the related entity from which it derives its rights to construct and maintain a telephone system within the meaning of OCGA §§ 46-5-1; 46-5-41 et seq. As a consequence of its status as a utility, Bell South has the right of use of county, municipal, and state roads and streets in the exercise of its franchise, unlike non-utilities. See generally *Blue Ridge Tel. Co. v. City of Blue Ridge*, 161 Ga. App. 452, 453-454 (1) (288 SE2d 705) (1982); *City of Macon v. Southern Bell Tel. &c. Co.*, 89 Ga. App. 252, 266-267 (79 SE2d 265) (1953). A telephone company can use the streets and highways for purposes related to installation and maintenance of the telephone lines. *City of Macon v. Southern Bell Tel. &c. Co.*, supra. However, such "use" means lawful use so as not to violate the duties imposed upon it by law or by contract with a governing entity. *Southern Bell Tel. &c. Co. v. Scogin*, 136 Ga. App. 318, 319-320 (221 SE2d 203) (1975).

The temporary obstruction of a street or highway by a telephone company as part of its construction is not a violation of any public right to use such roadway for travel. *Dekle v. Southern Bell Tel. &c. Co.*, 208 Ga. 254 (66 SE2d 218) (1951), overruled on other grounds, *Peachtree-Cain Co. v. McBee*, 254 Ga. 91 (327 SE2d 188) (1985). However, the telephone company may be liable in negligence or nuisance for creating a dangerous condition in the public roadway or unlawfully obstructing the roadway. *Southern Bell Tel. &c. Co. v. Martin*, 229 Ga. 881 (194 SE2d 910) (1972); *Southern Bell Tel. &c. Co. v. Howell*, 124 Ga. 1050, 1051-1052 (1) (53 SE 577) (1906); *City Council of Augusta v. Tharpe*, 113 Ga. 152, 158 (6) (38 SE 389) (1901); *Southern Bell Tel. &c. Co. v. Scogin*, supra at 319; *General Tel. Co. &c. v. Rutland*, 120 Ga. App. 291 (1) (170 SE2d 431) (1969); *Southern Bell Tel. &c. Co. v. Whiddon*, 108 Ga. App. 106 (3) (132 SE2d 237) (1963); *Blunt v. Spears*, 93 Ga. App. 623 (92 SE2d 573) (1956), rev'd on other grounds, *Southern Bell Tel. &c. Co. v. Spears*, 212 Ga. 537 (93 SE2d 659) (1956); *Bleckley v. Western Carolina Tel. Co.*, 42 Ga. App. 110 (155 SE 83) (1930). "Under certain circumstances, it has been held that the failure to properly maintain utility poles may create an inherently dangerous situation and may result in liability. *Lenderman v. Haynie*, 89 Ga. App. 513, 519-520 (2) [(80 SE2d 216) (1954)]." *Southern Bell Tel. &c. Co. v. Martin*, supra at 883; see also *South Ga. Power Co. v. Smith*, 42 Ga. App. 100 (155 SE 80) (1930). Such inher-

ent danger also arises from construction and maintenance work performed in the main traveled portions of highways, roads, and streets. Under OCGA § 51-2-5 (3) and (4), such duty is non-delegable and is imposed both by statute and implied contract between the utility and the county; therefore, the negligence of an independent contractor or sub-contractor is imputed to the defendant.

Where the power of eminent domain is exercised to perform utility work, the telephone company or public utility is liable for damage to property or a taking whether or not the utility does the act or does it through an independent contractor. See OCGA §§ 22-1-2; 46-5-1; *Woodside v. Fulton County*, 223 Ga. 316, 319-321 (1) (155 SE2d 404) (1967); see also *Ga. Power Co. v. Jones*, 122 Ga. App. 614 (178 SE2d 265) (1970). Under the doctrine of inverse condemnation, where an independent contractor performs work for a governmental body or public utility within a right-of-way and causes property damage within or outside of the right-of-way, such employer, notwithstanding an independent contractor relationship, is liable for any resulting damage, because both the federal and state constitutions mandate that private property cannot be taken for public use without just and adequate compensation first being paid. Such constitutional public policy requires that such mandate override the common law doctrine of independent contractor. See *Woodside v. Fulton County*, supra at 320-321; *Ga. Power Co. v. Jones*, supra at 615-616. If the doctrine of independent contractor cannot bar liability when *property* is damaged, then why should such doctrine bar liability when there is personal injury?

The telephone company obtains an easement over private lands and a franchise over public streets and roads, not a fee interest. This franchise or easement allows the erection of poles and guy wires or burial of cable, and the right to enter upon such easement or franchise to construct, maintain, or repair such telephone lines; such franchise does not allow a general interference with the use of the roadway by the public, but allows temporary obstruction of users. *Atlantic Coastline R. v. Postal Telegraph-Cable Co.*, 120 Ga. 268 (48 SE 15) (1904).

(a) Independent contractor under OCGA §§ 51-2-4; 51-2-5.

The case sub judice is distinguishable on the law and facts from *Dekle v. Southern Bell Tel. &c. Co.*, supra, for a number of reasons. First, *Dekle* dealt with a pedestrian; a pedestrian has a longer opportunity to react and avoid a danger from construction in the road than does a motorist who is moving much faster and must contend with other vehicles, as well as the road conditions. Construction in the main traveled portion of a highway, road, or street has become inherently dangerous since *Dekle* was decided, not only to the motorist, but also to the construction worker, because of the size, speed, and

number of vehicles, despite the many laws to protect the public.[1] Second, since *Dekle* was decided, the rights of public utilities to work in the public rights-of-way have been further regulated and permitted, provided that the public utilities pay to restore the roadway to the prior condition and do not create an unreasonably dangerous hazard.[2] The Georgia Department of Transportation has the right and power to allow utility work on state rights-of-way.[3] Counties have similar power and control over the county system of roads, but the county is prohibited from imposing a franchise fee, tax, rental fee, or other charge for permission for a utility to use the county road rights-of-way outside a municipality.[4] Where the plans and specifications of the public utility satisfactorily meet current technical requirements and criteria established by the Georgia Department of Transportation, and no valid reasons exist for the denial of a permit to built or install the utility in the rights-of-way of a street or road, the county must issue the permit to construct the utility in the road right-of-way.[5] Third, both *Woodside v. Fulton County*, supra at 320-321, and *Ga. Power Co. v. Jones*, supra at 615-616, were decided long after *Dekle*, showing a growing awareness that the common law doctrine of independent contractor has no application when a governmental entity or public utility is involved in work in a public right-of-way and causes damage to property. There is no valid public policy that would allow a plaintiff to recover for the injury to property, the motor vehicle and other personal property, but would bar his or her recovery for his or her *own* injury; even sovereign immunity has been partially waived to allow recovery under the State Tort Claims Act for personal injury.[6] Thus, utility construction or maintenance work

---

[1] Subsequent to *Dekle*, a number of statutes were passed that indicate a public safety concern over danger on the highways, roads, and streets of Georgia, and construction on the roadways. See OCGA §§ 32-6-1; 32-6-20 et seq.; 40-6-4; 40-6-75; 40-6-181; 40-6-182; 40-6-188; 40-10-1 et seq.

[2] OCGA §§ 32-6-1; 32-6-170; 40-6-5; 40-6-188; *Crider v. Kelley*, 232 Ga. 616, 619 (208 SE2d 444) (1974); *City of Fairburn v. Cook*, 188 Ga. App. 58, 60-61 (2) (372 SE2d 245) (1988). *Dekle*, supra at 258, held that any permit from governing authorities to work on the road implies a contract with the utility to restore the roadway to its original condition after the utility work is completed.

[3] OCGA § 32-2-2; *Crider v. Kelley*, supra at 618-619.

[4] OCGA §§ 32-4-1 (2); 32-4-40 et seq.; *Clack v. Henry County*, 261 Ga. 623 (409 SE2d 647) (1991); *DeKalb County v. Ga. Power Co.*, 249 Ga. 704 (292 SE2d 709) (1982).

[5] *DeKalb County v. Ga. Power Co.*, supra at 705-707; see also *Faulkner v. Ga. Power Co.*, 243 Ga. 649, 650-651 (256 SE2d 339) (1979); *Ga. R. &c. Co. v. City of Atlanta*, 154 Ga. 731, 744-746 (115 SE 263) (1922).

[6] The issue of sovereign immunity does not apply when the damages flow from inverse condemnation to property. *Powell v. Ledbetter Brothers, Inc.*, 251 Ga. 649, 650-651 (2) (307 SE2d 663) (1983), overruled on other grounds, *David Allen Co. v. Benton*, 260 Ga. 557 (398 SE2d 191) (1990). OCGA § 50-21-20 et seq. would allow a personal injury action where an individual was injured as a result of work performed for the state by an independent contractor in a public right-of-way, when such duty is non-delegable. See *Williams v. Ga. Dept.*

in the public highways, roads, and streets creates for motorists and construction workers in the roadway an inherently dangerous condition, so that the duty of reasonable care arising from engaging in such work without closing the road, which interferes with public use of the roadways, is a non-delegable duty arising from the rights and duties granted solely to the public utility only and can only be exercised as delegated power by a third party, under the supervision and control of the utility, which imposes liability for the conduct of such independent contractor. OCGA § 51-2-5 (2) and (4).[7] Further, the Supreme Court has not considered and ruled upon the foregoing issues.

(b) Contract granting control and supervision of the work.

The defendant had a contract with Brookins, which form contract, in *Bell South Telecommunications v. Helton*, 215 Ga. App. 435 (1) (451 SE2d 76) (1994), was held to create liability under OCGA § 51-2-5 (5), because appellant retained the right to control and supervise the work under the contract.

Generally, an agent cannot, by employing a sub-agent, create an agency between the principal and sub-agent without real or implied authority to do so. However, appellant cannot escape liability by allowing its agent to employ a sub-agent to perform non-delegable duties, under the contract or as a matter of law. See generally OCGA § 10-6-5; *Carter v. Bishop*, 209 Ga. 919, 926-930 (2) (76 SE2d 784) (1953); *White v. J. E. Levi & Co.*, 137 Ga. 269, 270-271 (2) (73 SE 376) (1911); *Burke County Bd. of Ed. v. Raley*, 104 Ga. App. 717, 720-721 (1) (123 SE2d 272) (1961); *Cowart v. Jordan*, 75 Ga. App. 855, 859-860 (2) (44 SE2d 804) (1947); *Samples v. Shaw*, 47 Ga. App. 337, 338 (3) (170 SE 389) (1933); *Cooper v. Lowery*, 4 Ga. App. 120 (60 SE 1015) (1908). Further, by accepting the work performed by Pro Grassing and paying Brookins for such work, appellant ratified Pro Grassing as a sub-agent under the contract. See *Carter v. Bishop*, supra at 927; *Harris v. Underwood*, 208 Ga. 247, 250 (4) (66 SE2d 332) (1951); *Lewis v. C & S Nat. Bank*, 139 Ga. App. 855, 859 (1) (229 SE2d 765) (1976); *Burke County Bd. of Ed. v. Raley*, supra at 721; OCGA § 51-2-

---

*of Corrections*, 224 Ga. App. 571, 573-576 (481 SE2d 272) (1997); see also OCGA § 50-21-22 (7).

[7] As to construction work that is inherently dangerous, see *Powell v. Ledbetter Brothers, Inc.*, supra at 651-652; see also *David Allen Co. v. Benton*, supra at 558; *Carney v. JDN Constr. Co.*, 206 Ga. App. 785, 786 (1) (426 SE2d 611) (1992); *Samuelson v. Lord, Aeck &c.*, 205 Ga. App. 568, 571 (423 SE2d 268) (1992); *Johnson v. Fowler Elec. Co.*, 157 Ga. App. 319, 320-321 (2) (277 SE2d 312) (1981); *Wilner's, Inc. v. Fine*, 153 Ga. App. 591, 592-593 (1) (266 SE2d 278) (1980); *PPG Indus. v. Genson*, 135 Ga. App. 248, 250-251 (2) (217 SE2d 479) (1974); *Peachtree North Apts. Co. v. Huffman-Wolfe Co.*, 126 Ga. App. 594 (191 SE2d 485) (1972); *Queen v. Craven*, 95 Ga. App. 178, 183-184 (3) (97 SE2d 523) (1957).

5 (6). Therefore, Bell South has imputed to it the negligence of the sub-agent.

(c) Non-compliance with the implied promise to restore road.

The Supreme Court of Georgia in *Dekle*, supra at 258, held that a telephone company had an implied contract with the governmental entity that issued the permit to restore the roadway after the utility work had been completed to the roadway's original condition. Failure by the independent contractor to so restore could constitute a violation of a duty imposed by contract under OCGA § 51-2-5 (3). The undisputed evidence in this case was that the trench in which the new telephone cable had been laid partially collapsed under the weight of appellees' vehicle in the rain. Such evidence raised a material issue of fact as to whether or not the independent contractor performed the duty imposed on Bell South to restore the roadway to its original condition. OCGA § 51-2-5 (3); *Dekle*, supra at 256.

DECIDED DECEMBER 3, 1997.

*Langley & Lee, Donald W. Lee*, for appellant.
*William M. Shingler, Ronnie J. Lane*, for appellees.